UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CRISTIAN RAMOS, ) | |
|    Plaintiff, ) | |
| ) | |
| vs. ) | No. 21-1148 |
| ) | |
| TERI KENNEDY, et. al., ) | |
|    Defendants ) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's complaint. The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff, a *pro se* prisoner, claims eight Defendants violated his constitutional rights at Pontiac Correctional Center including Warden Teri Kennedy, Officer Westley, Officer Hernandez, Officer John Doe #1, Officer John Doe #2, Sergeant John Doe, Dr. Andrew Tilden, and Wexford Health Sources.

Plaintiff details his requests for either medical or mental health care from May 27, 2019 through May 29, 2019. On the evening of May 27, 2019, Plaintiff first reported pain in his side and blood and a burning sensation when he urinated. A nurse was

1

called, but Plaintiff says he was placed on sick call for the following morning. Plaintiff does not provide any further information concerning his interactions with the nurse.

On May 28, 2019, Plaintiff again reported his condition, but he claims Defendants Officer Westley, Officer John Doe #1, and Officer John Doe #2 refused medical care and claimed Plaintiff was not on the sick call list. Plaintiff then threatened to harm himself and demanded a crisis team, but the officers still ignored him. Plaintiff says Sergeant John Doe witnesses the conversation, but he took no action.

Later in the day, Plaintiff also asked Defendant Hernandez for a crisis team. The officer tried to "soothe" Plaintiff but did not notify mental health staff. (Comp., p. 9).

Plaintiff then describes a conversation with an unknown Lieutenant on the evening on May 28, 2019 regarding a refusal form. However, the Court is unable to determine what claim Plaintiff is alleging and he has not identified the Lieutenant as a Defendant. (Comp., p. 10, 12).

Plaintiff met with Dr. Tilden on May 29, 2019 but Plaintiff claims the doctor "did not give me appropriate urgent care" which caused Plaintiff "more medical complications and possibly death." (Comp., p. 12). Plaintiff provides no further information. Did he receive a diagnosis? Did he receive any treatment or medication?

Plaintiff apparently believes he had some kind of infection. He mentions a temperature of 105.9 degrees, but it is unclear if he is claiming this was his temperature. (Comp., p. 13).

Plaintiff has attached a copy of his grievance including the response. (Comp., p. 16-18). The officer who spoke with Plaintiff on the evening of May 27, 2019 said

Plaintiff was "evaluated by medical staff that night." (Comp., p. 18). Furthermore, he believed Plaintiff received mental health care when he went "on watch the next night or some other time that week." (Comp., p. 18).

Based on his allegations, Plaintiff has identified several claims. For instance, he alleges Defendants Westley and the two unknown officers denied medical care in violation of his Eighth Amendment rights. He also alleges Defendants Hernandez, Westley, and the Unknown Sergeant failed to protect him when they did not call a crisis team. However, this claim is more accurately stated as deliberate indifference to Plaintiff' mental health condition, rather than a failure to protect claim.

Plaintiff may be able to proceed with his claims alleging the specific officers denied him needed medical and mental health care in violation of his Eighth Amendment rights. However, to proceed with these claims, Plaintiff must allege a serious medical condition. It is not clear from Plaintiff's complaint whether Plaintiff suffered a serious medical condition during the one-and-a-half-day delay before he saw a doctor.

In addition, Plaintiff says officers refused mental health care in retaliation for his "yelling at them and demanding a nurse and medical assistance." (Comp., p. 9). To state a retaliation claim, Plaintiff must allege: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [d]efendants' decision to take the retaliatory action." *Hoban v. Godinez*, 502 Fed.Appx. 574, 577 (7th Cir. 2012), *quoting Bridges v. Gilbert*, 557 F.3d 541,

3

546 (7th Cir. 2009). Plaintiff has not clearly articulated a protected First Amendment activity which sparked retaliatory behavior.

Plaintiff next says he has named Wexford as a Defendant because it employed medical staff and his "complaint arose" due to Wexford "using cost cutting measures." (Comp., p. 11). There is no allegation in Plaintiff's complaint concerning or inferring his care was denied due to cost cutting measures.

Finally, Plaintiff says he has named the Warden only to assist in identifying the John Doe Defendants. Since Plaintiff has named other Illinois Department of Corrections Defendants, the Court likely will not need to add the Warden.

Plaintiff has failed to provide enough information to allege a violation of his constitutional rights or to provide notice of his specific claims. In addition, his exhibits seem to contradict his allegations. Therefore, the Court will dismiss Plaintiff's complaint, but allow him an opportunity to clarify his allegations. The amended complaint must stand complete on its own and must not refer to any other filing.

Plaintiff's amended complaint must also clarify if he spoke with the nurse on the evening of from May 27, 2019 regarding his specific complaints and whether she examined Plaintiff. Plaintiff must also clarify if Dr. Tilden diagnosed his condition even if he disagrees with that diagnosis, and Plaintiff must clarify whether he was provided any medication or other treatment during this visit. Plaintiff must only describe his specific symptoms, not his concerns about what might have happened. This will help avoid confusion over his allegations. Plaintiff should also clarify his allegation concerning the refusal form.

In addition, Plaintiff should state why he requested a crisis team and whether he was able to speak with a mental health professional.

IT IS THEREFORE ORDERED that:

1) Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds Plaintiff has failed to clearly articulate a violation of his constitutional rights pursuant to 28 U.S.C. §1915A and Federal Rule of Civil Procedure 8.

2) The Court will allow Plaintiff an opportunity to file an amended complaint clarifying his claims. Plaintiff's amended complaint must stand complete on its own and must specifically address the concerns and questions raised in this order. Plaintiff must file his proposed amended complaint within 21 days or on or before October 14, 2021. If Plaintiff fails to file his amended complaint on or before October 14, 2021, or fails to address the issues raised in this order, this lawsuit may be dismissed.

3) The Clerk is to provide Plaintiff with a blank complaint form to assist him and to reset the internal merit review deadline within 30 days of this order.

4) Plaintiff is reminded he must immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

ENTERED this 22nd day of September, 2021.

s/James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE

1:21-cv-01148-JES   # 8   Page 6 of 6

6